UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA LARA, | |
| Plaintiff, | No. 20 C 7260 |
| v. | Judge Thomas M. Durkin |
| WEST LOOP MAID, INC. and ANNA WELNOWSKA, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Maria Lara alleges that her former employers—West Loop Maid, Inc. and Anna Welnowska—failed to pay her the minimum wage and overtime pay in violation of the Fair Labor Standards Act ("FLSA") and state and local law. She also brings tort claims against Welnowska under Illinois law for battery, false imprisonment, and intentional infliction of emotional distress. Defendants have moved for summary judgment on the wage claims, and also argue that the Court lacks subject matter jurisdiction over the tort claims. The motion is denied.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d

887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

West Loop Maid is a business that provides cleaning services for residences and commercial buildings. Welnowska owns and manages West Loop Maid.

Lara first worked for West Loop Maid from June 9, 2019, until July 6, 2019, when she suffered an injury while working. She returned to work in September 2019.

Lara moved into Welnowska's home around February 25, 2020. She testified that she agreed to clean and cook for Welnowska, as well as teaching her Spanish. Lara continued to work for West Loop Maid outside of Welnowska's home during this time.

Lara testified that Welnowska physically and verbally abused her while she lived in Welnowska's home. Lara also testified that Welnowska threatened to "call immigration" about Lara and threatened to sue Lara if she left the house without permission. When Welnowska left Lara alone in the house, she would lock the door

from the outside so Lara could not leave. However, when Lara left the house to perform work for West Loop Maid, she would return to Welnowska's house of her own volition. Lara stopped working for West Loop Maid and stopped living with Welnowska on May 7, 2020.

## Analysis

### I. Wage Claims

#### A. FLSA Scope

The most well-known provisions of the FLSA impose minimum wage and overtime pay obligations on employers whose employees are "engaged in [interstate] commerce or in the production of goods for [interstate] commerce," or are "employed in an enterprise engaged in [interstate] commerce or in the production of goods for [interstate] commerce." *See* 29 U.S.C. § 206(a) (minimum wage); 29 U.S.C. § 207(a)(1) (overtime). Defendants argue that neither of them is an "enterprise" for purposes of the FLSA, and that Lara did not engage in interstate commerce in working for them.

Lara points out that the FLSA has an additional provision expanding its scope beyond "enterprises" and employees "engaged" in interstate commerce. The FLSA also covers "employees in domestic service . . . in a household." *See* 29 U.S.C. § 206(f) (minimum wage); 29 U.S.C. § 207(l) (overtime).

Defendants "agree that the FLSA *can* apply to domestic service workers, as intended by Congress, but disagree with [Lara's] contention that it makes them exempt from the FLSA's underlying requirements." R. 89 at 2 (emphasis in original). In other words, Defendants argue that a domestic worker is still required to establish

that their employer is an "enterprise" or that they are "engaged" in interstate commerce in order to benefit from the FLSA's protections. According to Defendants, Lara's interpretation of the statute "would defeat the very purpose of having a coverage requirement and create a separate standard for domestic workers." *Id*. at 3.

The problem with Defendants' argument is that the FLSA does in fact create a separate standard for domestic workers. The "enterprise" and "engaged in commerce" requirements are provided in subsections (a) of sections 206 (minimum wage) and 207 (overtime). The "domestic worker" subsections—(f) and (l)—are entirely separate subsections under sections 206 and 207, and do not reference subsections (a). Contrary to Defendants' argument, there is nothing in the statute indicating that subsections (f) and (l) are subject to the requirements of subsections (a). Rather, the "enterprise" and "engaged in commerce" subsections and the "domestic worker" subsections are drafted as independent provisions establishing the scope of the FLSA based on independent factors—i.e., "enterprise" or "engaged in commerce" versus being a "domestic worker."

Notably, most courts agree that the FLSA covers "domestic workers" without reference to the "enterprise" or "engaged in commerce" requirements of subsections (a). *See Velez v. Sanchez*, 693 F.3d 308, 327 (2d Cir. 2012) ("But as the district court correctly noted, the domestic worker provision under which Velez brings her claim does not depend on whether her employer is an enterprise engaged in commerce or the production of goods for commerce. Instead, it covers any employee engaged in domestic service 'in a household.'"); *Arenas v. Truself Endeavor Corp.*, 2013 WL

271676, at *5 (N.D. Ill. Jan. 23, 2013) ("The plaintiffs were not 'engaged in commerce,' nor were they 'employed in an enterprise engaged in commerce.' But the Court finds, drawing all reasonable inferences in their favor, that they were 'employed in domestic service in one or more households,' and therefore they are entitled to FLSA protection."); *see also Murphy v. AllStaff Homecare, LLC*, 2019 WL 4645440, at *4 (D. Colo. Sept. 24, 2019) (citing cases); *Mason v. Pathfinders for Indep., Inc.*, 2022 WL 1092238, at *6 (M.D. Fla. Apr. 12, 2022) (citing cases).

Therefore, Lara's work is within the scope of the FLSA's protections.

### B. Proof of Compensation

Next, Defendants argue that Lara has not satisfied her burden to produce evidence about how much she worked and was paid. *See Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016) ("[A]n employee who brings suit pursuant to FLSA has the burden of proving that he performed work for which he was not properly compensated."). However, where "the employee alleges that [the] employer kept inaccurate records, [the employee] has carried out [her] burden if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Defendants concede that they do not have records of the number of hours Lara worked. *See* R. 88 at 7 (¶ 14).

The number of hours Lara worked each week, and whether she performed that work for West Loop Maid or Welnowska, changed at the end of February 2020 when

5

Lara began living in Welnowska's house. This change requires the Court to break up the analysis of Lara's claims accordingly.

### 1. Minimum Wage Claim Against West Loop Maid for Work from September 30, 2019 through February 25, 2020

Lara testified that she worked at least 40 hours per week for West Loop Maid from September 30, 2019 through February 25, 2020 for a total of 21 weeks and 840 hours. The federal minimum wage remains $7.25 per hour. That means Lara should have been paid at least $6,090. *See* R. 87 at 11. But she was only paid $5,537. *See* R. 88 at 13 (¶ 24).

Defendants argue that Lara's "beliefs" about how many hours she worked are "insufficient to create a genuine issue of material fact." R. 89 at 7-8. But an "FLSA plaintiff need not provide documentary evidence or definitive calculations of hours worked—his or her own testimony based on memory is enough to survive summary judgment if it is sufficiently specific." *Bum Hoon Lee v. BK Schaumburg Inc.*, 2020 WL 3577994, at *5 (N.D. Ill. 2020); *see also Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 819 (7th Cir. 2016) ("Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours."). Speculation is insufficient. *See Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 884-85 (N.D. Ill. 2022); *Lee v. Hanjin Intermodal Am., Inc.* 2021 WL 534661, at *5 (N.D. Ill. 2021). But approximations and beliefs or estimations based on "triggering factors" or the "particulars of the job" can be sufficient. *See Brown v. Family Dollar Stores*, 534 F.3d 593, 597; *see also Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013).

Lara's testimony that she worked at least 40 hours per week is not mere speculation. Rather, it is her memory regarding her own actions, which is reasonable on its face. A 40-hour work week is customary. The Court has no reason to believe that Lara's testimony is not credible. Thus, Lara's testimony is sufficient to meet her burden on her minimum wage claim against West Loop Maid for the work she performed from September 30, 2019 through February 25, 2020.

### 2. Overtime Claim Against West Loop Maid for Work from September 30, 2019 through February 25, 2020

Lara also brings claims for overtime pay. The FLSA requires any hours worked beyond 40 in a week to be compensated at an hourly rate of time and a half.

Lara testified that from September 30, 2019 through February 25, 2020, she worked for West Loop Maid for as many as 46 hours in a week about twice a month. *See* R. 88 at 8 (¶ 16). She testified that this estimate was based on her memory that in certain weeks she and her co-workers cleaned between three and four houses per day, which would result in a workweek of at least 46 hours. *See* R. 85-2 at 22-23 (81:9–82:9), 71 (277:13-21).

Defendants argue that this testimony is mere speculation. But Lara's memory about how long it took to clean three or four houses, and how often she was required to do so, is not speculation. And her memory about the particulars of her job reveals sufficient information about the length of time she worked each week to be a reasonable approximation sufficient for a reasonable jury to find that she was not paid the overtime compensation she was owed. Thus, Lara's testimony is sufficient to

7

meet her burden on her overtime claim against West Loop Maid for the work she performed from September 30, 2019 through February 25, 2020.

### 3. Minimum Wage Claims Against West Loop Maid and Welnowska for Work from February 25 to May 7, 2020

Lara testified that she lived with and was employed by Welnowska to work in her home from February 25 to May 7. *See* R. 88 at 8-9 (¶¶ 17-18). She also testified that she continued to work for West Loop Maid during this time, and that her total weekly hours for Welnowska and West Loop Maid was always at least 80 and sometimes exceeded 100. *See id.* at 12 (¶ 23). She was paid nothing for any of this work. *See* R. 88 at 14 (¶ 25) (Welnowska admits that all payments she and West Loop Maid made to Lara were for work before February 25, 2020).

Welnowska does not dispute any of these facts, but argues that she never employed Lara personally to work in her home. Presumably, Welnowska believes that any work Lara performed in Welnowska's home was in exchange for the room and board Welnowska was providing to her at the time.

Regardless of what Welnowska believed regarding her agreement with Lara, Lara's testimony is sufficient for a reasonable jury to find that she was not paid the minimum wage for any of the work she performed from the end of February through May 7, whether for West Loop Maid or for Welnowska personally. Lara testified that she worked between 80 and 100 hours each week and was paid nothing. Of course, $0 is well below the minimum wage.

### 4. Overtime Claim Against Welnowska for Work from February 25 to May 7, 2020

Additionally, Lara testified that she worked about 60 hours per week in Welnowska's house. *See* R. 88 at 10-12 (¶¶ 20-23). Because this is greater than 40 hours and Lara testified that she was not paid for this work, there is sufficient evidence of a jury to find that Lara should have received overtime wages.

### 5. Overtime Claim Against West Loop Maid for Work from February 25 to Mid-March, 2020

Lara's testimony also shows that she worked about 57 hours per week for West Loop Maid from February 25, 2020 through mid-March, when the COVID pandemic caused her hours to decrease. *Id.* As with the work Lara testified to performing for Welnowska personally, Lara's testimony that she worked about 57 hours per week for West Loop Maid is sufficient evidence for her to defeat summary judgment on her overtime claim against West Loop Maid for the period from February 25 through mid-March, 2020.

### 6. Overtime Claim Against West Loop Maid for Work from Mid-March to May 7, 2020

However, according to Lara's testimony, with the onset of the COVID pandemic, her work for West Loop Maid decreased to about 29 hours per week. This is not sufficient to trigger the FLSA's overtime required. Therefore, summary

judgment is granted to West Loop Maid on Lara's overtime claim for the period beginning in mid-March 2020 through May 7, 2020.[1]

## II.     Tort Claims

Lara also brings claims for battery, false imprisonment, and intentional infliction of emotional distress against Welnowska based on Welnowska's conduct while Lara lived in Welnowska's house. Welnowska does not seek summary judgment on these claims on the merits. Instead, Welnowska argues that the claims should be dismissed for lack of subject matter jurisdiction because they are "unrelated" to Lara's wage claims in that they "do not derive from a common nucleus of operative fact, and do not share any elements in common." R. 81 at 12.

Pursuant to 28 U.S.C. § 1367, this Court may only exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For the court to exercise supplemental jurisdiction, the state law claim and federal claim must derive from a common nucleus of operative fact, such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997). However, a "loose factual connection between

---

[1] The Court's findings regarding Lara's minimum wage and overtime claims under the FLSA apply equally to her parallel claims under state law and local ordinances, and to her breach of contract claim.

the claims is generally sufficient." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). And "[p]endent jurisdiction is a doctrine of discretion." *Id.*

Here, Lara and Welnowska are both the only parties to Lara's wage and tort claims for the time Lara lived in Welnowska's house. Moreover, the agreement for Lara to live and work in Welnowska's house is the underlying occurrence of both Lara's wage and tort claims after February 25, 2020. For these reasons, the claims are properly before the Court under pendent jurisdiction.

## Conclusion

Therefore, Defendants' motion for summary judgment [80] is denied, with the limited exception of granting summary judgment to West Loop Maid on Lara's overtime claim for work she performed from mid-March 2020 through May 7, 2020.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: June 14, 2024